# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

CORRECT TRANSMISSION, LLC,

    *Plaintiff*,

    v.

JUNIPER NETWORKS, INC.,

    *Defendant*.

Case No. 6:20-cv-670-ADA

**JURY TRIAL DEMANDED**

## JUNIPER'S OPPOSED MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA

**TABLE OF CONTENTS**

INTRODUCTION ..............................................................................................................1

FACTUAL BACKGROUND ...........................................................................................2

LEGAL STANDARD ......................................................................................................5

ARGUMENT ...................................................................................................................6

    I.    CORRECT TRANSMISSION COULD HAVE BROUGHT THIS CASE IN THE NORTHERN DISTRICT OF CALIFORNIA. ..............................................6

    II.    THE PRIVATE-INTEREST FACTORS WARRANT TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA. ..............................................6

        A.    The "Sources of Proof" Factor Favors Transfer. .................................6

        B.    The "Cost of Attendance" and "Compulsory Process" Factors Both Favor Transfer. .................................................................................8

        C.    "Other Practical Problems" is Neutral. ..............................................10

    III.    THE PUBLIC-INTEREST FACTORS ALSO FAVOR TRANSFER. ......................10

        A.    The "Local Interest" Strongly Favors Transfer. ................................10

        B.    Court Congestion Is Neutral. ..............................................................12

        C.    The Third and Fourth Public-Interest Factors Are Neutral. ...............12

CONCLUSION ..............................................................................................................13

**Cases**

*Affinity Labs of Texas, LLC v. Samsung Elecs. Co.*,
   No. 6:13-cv-364, 2014 WL 12570501 (W.D. Tex. June 11, 2014)....................................11, 13

*Auto-Dril, Inc. v. Canrig Drilling Tech. Ltd.*,
   No. 6:15-cv-96, 2015 WL 13691866 (W.D. Tex. May 22, 2015)...........................................12

*Blue Spike, LLC v. Juniper Networks, Inc.*,
   No. 6:17-cv-16, 2018 WL 4222994 (E.D. Tex. Mar. 8, 2018)....................................................1

*Chrimar Sys., Inc. v. Juniper Networks, Inc.*,
   No. 6:15-cv-630, 2016 WL 126936 (E.D. Tex. Jan. 11, 2016)....................................................1

*Datascape, Ltd. v. Dell Techs., Inc.*,
   No. 6:19-cv-129-ADA, 2019 WL 4254069 (W.D. Tex. June 7, 2019)....................................11

*DynaEnergetics Europe GMBH v. Hunting Titan, Inc.*,
   No. 6:20-cv-69-ADA, 2020 WL 3259807 (W.D. Tex. June 16, 2020)......................................8

*Fintiv, Inc. v. Apple Inc.*,
   No. 6:18-cv-372-ADA, 2019 WL 4743678 (W.D. Tex. Sept. 13, 2019).............................6, 7

*Freehold Licensing, Inc. v. Aequitatem Capital Partners, LLC*,
   No. 18-cv-413, 2018 WL 5539929 (W.D. Tex. Oct. 29, 2018) .................................................6

*GraphOn Corp. v. Juniper Networks, Inc.*,
   No. 2:07-cv-373, ECF No. 161 (E.D. Tex. Dec. 30, 2009)........................................................1

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947) ...............................................................................................................10

*Hammond Dev. Int'l, Inc. v. Google LLC*,
   No. 1:20-cv-342-ADA, 2020 WL 3452987 (W.D. Tex. June 24, 2020)................................11

*In re Genentech*,
   566 F.3d 1338 (Fed. Cir. 2009) .........................................................................................7, 12

*In re Microsoft Corp.*,
   630 F.3d 1361 (Fed. Cir. 2011) ............................................................................................10

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ..............................................................................................5

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ...........................................................................................5, 10

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ..............................................................................5, 6

*IPVX Patent Holdings, Inc. v. Adtran, Inc.*,
No. 6:12-cv-166, 2013 WL 12246616 (E.D. Tex. Mar. 21, 2013)...........................10

*Network Prot. Scis., LLC v. Juniper Networks, Inc.*,
No. 2:10-cv-224, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) ..................................1

*Parity Networks, LLC v. Juniper Networks, Inc.*,
No. 6:17-cv-495, 2018 WL 10124889 (E.D. Tex. Sept. 17, 2018) .............................1

*Parus Holdings Inc. v. LG Elecs. Inc.*,
No. 6:19-cv-432-ADA, 2020 WL 4905809 (W.D. Tex. Aug. 20, 2020).........6, 9, 10

*Polaris Innovations Ltd. v. Dell, Inc.*,
No. 16-cv-451-XR, 2016 WL 7077069 (W.D. Tex. Dec. 5, 2016)...........................11

*Solas OLED Ltd. v. Apple Inc.*,
No. 6:19-cv-537-ADA, 2020 WL 3440956 (W.D. Tex. June 23, 2020)......................8

*TC Heartland, LLC v. Kraft Foods Group Brands, LLC*,
137 S.Ct. 1514 (2017) ...............................................................................................6

*Uniloc 2017 LLC v. Apple Inc.*,
No. 6:19-cv-532-ADA, 2020 WL 3415880 (W.D. Tex. June 22, 2020)......................5

*URS Corp. v. TDA Research, Inc.*,
No. 15-cv-507-LY, 2015 WL 5330610 (W.D. Tex. Sept. 14, 2015) ........................12

*Vassallo v. Goodman Networks, Inc.*,
No. 5:14-cv-743-DAE, 2015 WL 502313 (W.D. Tex. Feb. 5, 2015) ......................11

*VLSI Tech. LLC v. Intel Corp.*,
No. 6:19-cv-254-ADA, 2019 WL 8013949 (W.D. Tex. Oct. 7, 2019) .....................8

*XY, LLC v. Trans Ova Genetics, LC*,
No. 16-cv-447-RP, 2017 WL 5505340 (W.D. Tex. Apr. 5, 2017)...........................11

**Statutes**

28 U.S.C. § 1400 .............................................................................................................6

28 U.S.C. § 1404 ..........................................................................................................5, 6

**INTRODUCTION**

Ten of the knowledgeable Juniper employee witnesses are at its Sunnyvale, California headquarters, and the other two are in Massachusetts and India. None are in Texas. Juniper maintains its relevant documents and source code at its Sunnyvale headquarters, as well. None of this information is in the Lone Star State. Correct Transmission is based in Delaware, and also doesn't appear to have any witnesses or documents in Texas.[1] And there are no known third-party witnesses in Texas. Indeed, all five patents-in-suit were developed overseas, with six of the inventors remaining outside the United States and the other two working within twenty miles of Juniper's Sunnyvale headquarters. As such, transfer is warranted.

The Federal Circuit has repeatedly held "that in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer."[2] And here, based largely on the facts above, four of the traditional § 1404(a) factors strongly favor transfer, while the others are neutral or inapplicable. Thus, Juniper respectfully asks this Court to transfer this case to the Northern District of California.[3]

---

[1] *See* ECF No. 1 (Complaint) at ¶ 4; *see also id*. at ¶ 163 (alleging Correct Transmission doesn't "distribute, sell, offer for sale, or make products embodying the Asserted Patents").

[2] *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

[3] Other district courts have granted Juniper motions to transfer to the Northern District of California on similar fact sets. For instance, the Eastern District of Texas has previously granted five such motions, notwithstanding Juniper's Plano sales office. *Blue Spike, LLC v. Juniper Networks, Inc.*, No. 6:17-cv-16, 2018 WL 4222994 (E.D. Tex. Mar. 8, 2018); *Parity Networks, LLC v. Juniper Networks, Inc.*, No. 6:17-cv-495, 2018 WL 10124889 (E.D. Tex. Sept. 17, 2018); *Chrimar Sys., Inc. v. Juniper Networks, Inc.*, No. 6:15-cv-630, 2016 WL 126936 (E.D. Tex. Jan. 11, 2016); *Network Prot. Scis., LLC v. Juniper Networks, Inc.*, No. 2:10-cv-224, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012); *GraphOn Corp. v. Juniper Networks, Inc.*, No. 2:07-cv-373, ECF No. 161 (E.D. Tex. Dec. 30, 2009).

## FACTUAL BACKGROUND

Juniper designs and sells high-performance networking products and services, including routers, gateways, associated software, and support.[4] Juniper's principal place of business is in Sunnyvale, California, within the Northern District of California.[5] Juniper employees research, design, develop, and test the vast majority of Juniper's products in Sunnyvale.[6] In addition to those development activities, Juniper employees in Sunnyvale are responsible for the marketing and finances for Juniper's products, since the finance, accounting, and marketing departments are also headquartered there.[7]

None of the relevant employees or documents that Juniper has identified are located in the Western District of Texas.[8] Of the twelve Juniper employees identified to date with relevant information about the accused products, ten work in Sunnyvale and the other two are in Massachusetts and India, respectively.[9] The documents associated with the accused products, including source code files, are also located and maintained in Sunnyvale.[10]

Among its 109 offices worldwide, Juniper does have three small offices in Texas.[11] The

---

[4] *See* Declaration of David M. Saunders ("Saunders Decl.") at ¶ 2.

[5] *Id.*

[6] *Id.*

[7] *See id.*

[8] *Id.* at ¶¶ 5, 8-10.

[9] *Id.* at 5-8.

[10] *Id.* at ¶ 9. Juniper also maintains source code repositories in Massachusetts and India. *Id.*

[11] *Id.* at ¶ 10.

only office within the Western District is located in Austin. Juniper has approximately 40 employees working in or around the Austin area, some of whom work from home.[12] But the employees at that office don't have unique information or knowledge about the accused products.[13] And many of those employees perform activities related to Juniper's Mist product line, which isn't accused in this case.[14] In short, virtually all Juniper employees with relevant knowledge and relevant Juniper documents are located in the proposed transferee venue, the Northern District of California.

Likewise, Correct Transmission, a non-practicing entity, is unlikely to have any witnesses or evidence in the Western District of Texas. The complaint alleges that Correct Transmission "does not currently distribute, sell, offer for sale, or make products embodying the Asserted Patents."[15] Further, the complaint alleges that Correct Transmission is a Delaware limited liability company, with a principal place of business in Lewes, Delaware, at what appears to be the office of its registered agent.[16] And Correct Transmission hasn't alleged that it has any offices or operations in, or any other ties to, Texas or the Western District of Texas.

Much like Correct Transmission, the five patents-in-suit also have no connection to Texas. All five patents were developed by inventors in Israel and were originally assigned to

---

[12] *Id* at ¶ 10.

[13] *Id*.

[14] *Id*.

[15] ECF No. 1 at ¶ 163.

[16] *Id*. at ¶ 4. Specifically, Correct Transmission alleges its principal place of business is 16192 Coastal Highway, Lewes, DE 19958. Per Delaware public records, this is the address of its registered agent, Harvard Business Services. *See* Declaration of R. William Sigler ("Sigler Decl.") at ¶ 2; Ex. A. As used herein, "Ex. _" refers to exhibits attached to the Sigler Decl.

Corrigent Systems, also in Israel.[17] But one named inventor (of eight total, across the five patents) now appears to live in the San Francisco Bay Area, within the Northern District of California. Specifically, Moran Roth, a named inventor on the '150 Patent, works at Infinera, a telecommunications-equipment manufacturer based in Sunnyvale, California.[18] In addition, Rafi Harel, a named inventor on the '928 Patent, heads a technology company that has its only U.S. office in San Jose, also within the Northern District.[19] And all the remaining named inventors likely still reside in Israel.[20]

Other potential third-party witnesses, such as the prosecuting attorneys, all appear to be located outside of Texas. The attorney who prosecuted the '669 and '523 Patents works in New York.[21] The prosecuting attorney for the '150 Patent works in New Hampshire.[22] And the only U.S. office of the law firm that prosecuted the '465 Patent is in Virginia,[23] as is the agent who prosecuted the '928 Patent.[24]

---

[17] The patents use the abbreviation "IL" for Israel. *See*, *e.g.*, ECF No. 1-1 ('669 Patent stating that assignee Corrigent was in "Tel Aviv (IL)"); *see also* Ex. B.

[18] *See* Sigler Decl. at ¶ 4; Ex. C.

[19] *See* Sigler Decl. at ¶ 5; Ex. D. According to Mr. Harel's LinkedIn profile, he lives in Israel and is the co-founder and CEO of Opsys Technologies. But the website for his company lists only two offices—one in Israel and one in San Jose, California. Ex. D at 3.

[20] Juniper has found LinkedIn profiles indicating that Leon Bruckman ('150 and '465 Patents), Ronen Solomon ('928 Patent), and David Zelig ('465 Patent) are still employed in Israel. *See* Sigler Decl. at ¶ 6; Ex. E. Current residency and employment information is not readily apparent for the remaining three named inventors: Yoav Kotser ('523 and '465 Patents), Ron Sdayoor ('150 Patent), and Rafi Shalom ('669 Patent). But all had addresses in Israel during prosecution, *see*, *e.g.*, Ex. B, and Juniper has no information suggesting they have ever had any ties to Texas.

[21] *See* Sigler Decl. at ¶ 7; Ex. F.

[22] *See* Sigler Decl. at ¶ 8; Ex. G.

[23] *See* Sigler Decl. at ¶ 9; Ex. H. The attorney who primarily prosecuted this patent, Gregory Maier, appears to no longer be practicing.

[24] *See* Sigler Decl. at ¶ 10; Ex. I.

In sum, nearly all the evidence and witnesses pertinent to this case, including two of the inventors, are located in the Northern District of California. And Juniper isn't aware of any relevant evidence or potential witnesses in this District, or elsewhere in Texas.

## **LEGAL STANDARD**

28 U.S.C. § 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In the Fifth Circuit, a § 1404(a) motion "should be granted" if the movant shows that a venue where the action might have been brought is "clearly more convenient."[25] This turns on a number of private- and public-interest factors, none of which is given dispositive weight.[26] The private-interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."[27] The public-interest factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws."[28] A plaintiff's choice of venue isn't an independent factor in the analysis.[29]

---

[25] *E.g.*, *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (applying Fifth Circuit law); *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) ("*Volkswagen II*") (emphasizing that "clearly more convenient" is intended to be "less demanding" than "substantially more convenient," the standard that applies to *forum non conveniens* dismissals).

[26] *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").

[27] *Id.*

[28] *Id.*

[29] *E.g.*, *Uniloc 2017 LLC v. Apple Inc.*, No. 6:19-cv-532-ADA, 2020 WL 3415880, at *2 (W.D. Tex. June 22, 2020) (Albright, J.) (further noting "courts must not give inordinate weight to a plaintiff's choice of venue"); *see also Freehold Licensing, Inc. v. Aequitatem Capital Partners,*

## ARGUMENT

## I. CORRECT TRANSMISSION COULD HAVE BROUGHT THIS CASE IN THE NORTHERN DISTRICT OF CALIFORNIA.

On a motion to transfer, the preliminary question is whether an action "might have been brought" in the proposed destination venue.[30] Under 28 U.S.C. § 1400(b), venue is proper where the defendant is incorporated, or has allegedly infringed and has a regular and established place of business.[31] Juniper's principal place of business is in Sunnyvale, California, which is where Juniper also designed, tested, marketed, and sold the accused products.[32] Thus, Correct Transmission could've brought suit in the Northern District of California.[33]

## II. THE PRIVATE-INTEREST FACTORS WARRANT TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA.

### A. The "Sources of Proof" Factor Favors Transfer.

As this Court explained in *Parus Holdings Inc. v. LG Electronics Inc.*, the first private-interest factor considers "where the parties store documentary evidence, such as documents and physical evidence."[34] In this case, the vast majority of such evidence is located at Juniper's headquarters in Sunnyvale. That's where the Juniper employees involved in the design, development,

---

*LLC*, No. 18-cv-413, 2018 WL 5539929, at *6 (W.D. Tex. Oct. 29, 2018) (Austin, Mag. J.) ("When a plaintiff is not a resident of the chosen forum, or the operative facts … did not occur [there], the court will not give as much deference to a plaintiff's choice."), *adopted*, 2018 WL 11170601 (Nov. 19, 2018).

[30] 28 U.S.C. § 1404(a); *Volkswagen II*, 545 F.3d at 312.

[31] *See also TC Heartland, LLC v. Kraft Foods Group Brands, LLC*, 137 S.Ct. 1514, 1521 (2017).

[32] *See* Saunders Decl. at ¶¶ 2–3, 5, 8.

[33] *E.g.*, 28 U.S.C. § 1400(b).

[34] No. 6:19-cv-432-ADA, 2020 WL 4905809, at *2 (W.D. Tex. Aug. 20, 2020) (Albright, J.). This Court has stated that it "believes that this factor is at odds with the realities of modern patent litigation," but has held that, "under current Fifth Circuit precedent, the physical location of electronic documents does affect the outcome of this factor." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-372-ADA, 2019 WL 4743678, at *4 (W.D. Tex. Sept. 13, 2019) (Albright, J.); *see also Parus*

testing, updating, marketing, and financing of Juniper's products, including the accused products, are predominately located.[35] And that's where ten of the twelve employees identified as knowledgeable about the structure, function, marketing, and finances of the accused products work.[36] Further, Sunnyvale is where Juniper's highly confidential source code can be reviewed, and where Juniper maintains the vast majority of documents relevant to the accused products, including technical, marketing, and financial documents.[37] Juniper also isn't aware of any such evidence in Texas.[38]

Moreover, as the alleged infringer, Juniper will almost certainly produce the majority of the relevant evidence in this matter. As the Federal Circuit observed in *In re Genentech*:

> In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.[39]

The fact that Correct Transmission has no business activities and likely no relevant evidence in this District further confirms that most of the evidence is located at Juniper's headquarters in Northern California. And as further detailed below, third-party evidence may also be in Northern California.[40] Thus, the "sources of proof" factor favors transfer.

---

*Holdings*, 2020 WL 4905809, at *3 (similarly holding that this Court "must adhere to the precedent of the Fifth Circuit when considering the location of relevant documents").

[35] *See* Saunders Decl. at ¶¶ 2–3, 5, 8.

[36] *Id*. at ¶¶ 5, 8. Of the other two employees with relevant knowledge, one is in Westfield, MA, and the other is in Bangalore, India. *Id*. at ¶¶ 6-8.

[37] *Id.* at ¶ 9.

[38] As noted, no relevant witnesses work at Juniper's small offices in Austin or elsewhere in Texas, nor are any relevant documents maintained there. *See id*. at ¶¶ 5, 8–10.

[39] 566 F.3d 1338, 1345 (Fed. Cir. 2009); *accord Fintiv*, 2019 WL 4743678, at *3.

[40] As noted, two of the named inventors appear to work in the Northern District.

### B. The "Cost of Attendance" and "Compulsory Process" Factors Both Favor Transfer.

The location of key witnesses is often the crucial factor in the transfer analysis. As this Court stated in *Parus Holdings*: "The convenience of witnesses is the single most important factor in the transfer analysis."[41] And this Court gives particularly great weight to the convenience of key witnesses, especially non-parties.[42] As this Court explained in *VLSI Technology v. Intel Corp.*, this may include any named inventors: "Because inventors' testimony is extremely important, inventors are key witnesses and the Court gives greater weight to their convenience."[43]

In this case, the key witnesses' locations weigh heavily in favor of transfer. Nearly all Juniper witnesses knowledgeable about the accused products work at Juniper's Sunnyvale headquarters. Juniper isn't aware of any party witnesses located in Texas, much less any key witnesses.[44] Thus, the Northern District is "clearly more convenient" for party witnesses.

Beyond that, two key third-party witnesses appear to live or work in the Northern District of California, making that venue more convenient for those witnesses, or making them subject to

---

[41] 2020 WL 4905809, at *5; *accord VLSI Tech. LLC v. Intel Corp.*, No. 6:19-cv-254-ADA, 2019 WL 8013949, at *4 (W.D. Tex. Oct. 7, 2019) (Albright, J.) ("The relative convenience to the witnesses is often recognized as the most important factor under § 1404(a)").

[42] *E.g.*, *VLSI*, 2019 WL 8013949, at *4; *see also DynaEnergetics Europe GMBH v. Hunting Titan, Inc.*, No. 6:20-cv-69-ADA, 2020 WL 3259807, at *8 (W.D. Tex. June 16, 2020) (Albright, J.) ("The Court considers the cost of attendance for party and non-party witnesses but gives the cost of attendance of non-party witnesses considerably more weight.").

[43] *VLSI*, 2019 WL 8013949, at *4.

[44] Even if the employees in Juniper's Austin office were viewed as potential witnesses, they still possess no information that more-senior employees in Sunnyvale couldn't provide, and thus shouldn't influence the transfer analysis. *See Solas OLED Ltd. v. Apple Inc.*, No. 6:19-cv-537-ADA, 2020 WL 3440956, at *4 (W.D. Tex. June 23, 2020) (Albright, J.) (explaining that, when weighing relative convenience, this Court considers, *inter alia*, "the witness's title and relevant experience, the likelihood that a witness may have relevant information, the number of witnesses, … whether the testimony of those witnesses goes to an element of a claim, the amount of public information available to the parties, etc.") (internal quotations omitted).

compulsory process there. In particular, Moran Roth, a named inventor on the '150 Patent, appears to live and work in the San Francisco Bay Area.[45] And Rafi Harel, one of the '928 Patent's named inventors, appears to be co-founder and CEO of a technology firm with its sole U.S. office (one of two offices worldwide) in San Jose.[46] By contrast, no such witnesses appear to be in this District.

The Northern District of California also is more convenient for the remaining inventors, all of whom appear to be located in Israel.[47] Nonstop flights between Israel's Ben Gurion Airport in Tel Aviv and San Francisco are available on a more-often-than-daily basis.[48] By contrast, no airport within a thousand miles of Waco currently offers nonstop service to Israel.[49] Thus, absent transfer, an Israeli witness would need to fly from Israel to a connecting city, then fly to Dallas or Houston, and then fly or drive to Waco.[50] So a single nonstop flight to San Francisco would be quicker and more convenient.

Thus, for the American and overseas witnesses, including key witnesses, the Northern District of California is substantially more convenient. And both the "cost of attendance" and

---

[45] *See* note 18, *supra*.

[46] *See* note 19, *supra*. If Mr. Harel works or regularly does business in that office, then he, like Roth, is subject to the compulsory process. *See* Fed. R. Civ. P. 45 (c)(1)(A)–(B); *Parus Holdings*, 2020 WL 4905809, at *4.

[47] *See* note 20, *supra*. To the extent this Court considers the attorneys and patent agent who prosecuted the patents-in-suit, neither San Francisco nor Waco is significantly more convenient, as any such potential witnesses are located in New York, Virginia, and New Hampshire.

[48] In March 2021, the latest month for which information is available, Ben Gurion Airport's online timetable currently shows 32 one-way flights departing for San Francisco, and no flights departing for Dallas or Houston. Sigler Decl. at ¶ 11; Ex. J.

[49] The number of flights to the US may change once the COVID-19 pandemic is over. Currently, Las Vegas appears to be the closest airport with one nonstop flight per week to and from Israel.

[50] Only Dallas/Fort Worth currently offers service to Waco Regional Airport. *See Airline Schedules*, CITY OF WACO, https://www.waco-texas.com/airport/schedules.asp#gsc.tab=0.

"compulsory process" factors favor transfer.[51]

## C. "Other Practical Problems" is Neutral.

This Court and the Northern District of California are equally capable of hearing this case, and there are no reasons of judicial economy that justify keeping it here. Although Correct Transmission has filed one other complaint in this District that asserts the same patents against an unrelated defendant, Adtran, Inc., that case is also in its infancy.[52] And Adtran recently moved to dismiss or transfer to Northern District of Alabama, where it has its headquarters.[53] Like Juniper, Adtran also has succeeded in requesting transfer from Texas in the past, and for similar reasons.[54] Thus, no "practical problems" seem to weigh against transfer here.[55]

## III. THE PUBLIC-INTEREST FACTORS ALSO FAVOR TRANSFER.

### A. The "Local Interest" Strongly Favors Transfer.

As the Fifth Circuit has explained, it's axiomatic that "jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."[56]

---

[51] *See*, *e.g.*, *Parus Holdings*, 2020 WL 4905809, at \*4 (explaining that "compulsory process" factor turns on which district can more readily compel attendance of non-party witnesses); *In re Microsoft Corp.*, 630 F.3d 1361, 1363 (Fed. Cir. 2011) ("[T]he factors should conform to the fact that a significant number of witnesses and parties were actually located within the transferee venue and could be deposed and testify without significant travel or expense, while no witness or party was located within the plaintiff's chosen forum.").

[52] *See Correct Transmission, LLC v. Adtran, Inc.*, W.D. Tex. Case 6:20-cv-669-ADA; *see generally Parus Holdings*, 2020 WL 4905809, at \*7 (observing, in a case that was "in its early stages," that [...] any increase in judicial economy ... is likely to be limited").

[53] W.D. Tex. Case 6:20-cv-669-ADA, ECF No. 10.

[54] *IPVX Patent Holdings, Inc. v. Adtran, Inc.*, No. 6:12-cv-166, 2013 WL 12246616, at \*2–4 (E.D. Tex. Mar. 21, 2013) (transferring because, *inter alia*, transferee forum had greater local interest and was where Adtran's relevant documents and witnesses were located).

[55] *See also Parus Holdings*, 2020 WL 4905809, at \*7 (noting "mere co-pendency of related suits" cannot "automatically tip the balance in non-movant's favor").

[56] *E.g.*, *Volkswagen I*, 371 F.3d at 206 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)) (internal alteration omitted).

Thus, the "local interest" factor weighs the relative interests of the transferee and transferor venues in adjudicating a dispute.[57] And as previously discussed, Juniper's activities pertaining to the accused products—including design, development, testing, marketing, and financial management—have taken place at Juniper's headquarters. By contrast, Correct Transmission, which doesn't allege any ties to the Western District, hangs venue in this District on the presence of Juniper's small Austin office. But as explained above, Juniper hasn't identified any employees there involved in the design, development, manufacture, or marketing of the accused products.[58]

Given these facts, this Court's precedents confirm that the "local interest" favors transfer. Indeed, this Court has held that the "district where a party has its principal place of business typically has a stronger local interest in the adjudication of the case."[59] Even when a movant has "a large number of employees in both districts," a fact not present here, the "local interest" favors transfer if the movant "researched, designed, and developed the accused functionality" in the transferee district.[60] And as this Court has recognized, the mere presence of an office within this District carries "little weight" in the analysis "in the absence of any indication that the events giving rise to [the] suit occurred" here.[61] Accordingly, because virtually all the substantive activities pertaining to the accused products occurred at Juniper's Sunnyvale headquarters, not in this

---

[57] *E.g.*, *Datascape, Ltd. v. Dell Techs., Inc.*, No. 6:19-cv-129-ADA, 2019 WL 4254069, at *3 (W.D. Tex. June 7, 2019) (Albright, J.).

[58] *See* ECF No. 1 at ¶ 7; Saunders Decl. at ¶ 10.

[59] *XY, LLC v. Trans Ova Genetics, LC*, No. 16-cv-447-RP, 2017 WL 5505340, at *9 (W.D. Tex. Apr. 5, 2017) (Manske, Mag. J.); *accord Affinity Labs of Texas, LLC v. Samsung Elecs. Co.*, No. 6:13-cv-364, 2014 WL 12570501, at *4 (W.D. Tex. June 11, 2014) (Smith, J.); *Polaris Innovations Ltd. v. Dell, Inc.*, No. 16-cv-451-XR, 2016 WL 7077069, at *11 (W.D. Tex. Dec. 5, 2016) (Rodriguez, J.) ("[A] headquarters in a certain location gives [it] a strong local interest.").

[60] *Hammond Dev. Int'l, Inc. v. Google LLC*, No. 1:20-cv-342-ADA, 2020 WL 3452987, at *5 (W.D. Tex. June 24, 2020) (Albright, J.).

[61] *Vassallo v. Goodman Networks, Inc.*, No. 5:14-cv-743-DAE, 2015 WL 502313, at *5 (W.D. Tex. Feb. 5, 2015) (Ezra, J.) (noting that "[n]ational companies may have offices in virtually

11

District, Northern California's deep local interest in this matter strongly favors transfer.

## B.     Court Congestion Is Neutral.

This Court and the Northern District of California have comparable times to trial.[62] But

the Western District was the fourth busiest in the nation by filings per judgeship, with 52 percent

more than California's Northern District.[63] And within the Western District, the caseload of the

Waco Division has increased 56 percent from 2018 to 2019.[64] Given these facts, Juniper respect-

fully submits that "court congestion" is neutral, even if the Waco Division's time to trial is, at

present, slightly faster than the Northern District of California.[65]

## C.     The Third and Fourth Public-Interest Factors Are Neutral.

Both this Court and the Northern District of California are familiar with the federal law

governing patent infringement, and this case doesn't concern foreign law or raise any questions

---

every judicial district," and emphasizing need to consider "those actually affected … by the controversy and the case"); *accord Auto-Dril, Inc. v. Canrig Drilling Tech. Ltd.*, No. 6:15-cv-96, 2015 WL 13691866, at *3 (W.D. Tex. May 22, 2015) (Manske, Mag. J.) (Mere sale of allegedly infringing products doesn't constitute a substantial local interest.).

[62] For the year ending December 31, 2019, this District's time to trial was six months slower than the Northern District of California (27.9 versus 22.3 months, respectively). And for the partially overlapping year ending June 30, 2020, this District was seven months faster (22.4 versus 29.3, respectively). *See* Federal Court Management Statistics, https://www.uscourts.gov/statistics-reports/analysis-reports/federal-court-management-statistics.

[63] In 2019, this District was fourth busiest (with 1,238 filings per judgeship), while the Northern District of California was 17th (with 689 filings). In the year ending June 2020, this District remained fourth (with 1,089 filings), while the Northern District was 12th (with 715 filings). *Id.*

[64] Sigler Decl. at ¶ 12; Ex. K.

[65] *See Genentech*, 566 F.3d at 1347 (describing this factor as "the most speculative"); *URS Corp. v. TDA Research, Inc.*, No. 15-cv-507-LY, 2015 WL 5330610, at *4 (W.D. Tex. Sept. 14, 2015) (Austin, Mag. J.) (finding this factor favored transfer when W.D. Tex. was third busiest, despite time to trial being nine months faster than transferee venue). Further, although the Order Governing Proceedings suggests that trial may be scheduled for 75 weeks after the October 16, 2020 conference, this case may take longer, as Correct Transmission estimates asserting 90 claims of the five patents. *See* ECF No. 18 at 2; *see also* Patent FAQ, https://www.txwd.uscourts.gov/for-attorneys/judge-albright-courtroom-faq/ (stating that this Court provides estimated trial dates "based on the number of patents-in-suit, the complexity of the case, etc.").

involving conflicts of law. Therefore, the third and fourth public-interest factors are neutral.[66]

## <u>CONCLUSION</u>

Four of the § 1404(a) factors strongly favor transfer to the Northern District of California, where Juniper and the majority of the relevant witnesses and documents are located. Indeed, ten party witnesses, two third-party witnesses, and most of the relevant documents identified to date are located in Northern California. None are located in Texas. And the remaining four factors are neutral. Thus, Juniper respectfully requests that the Court transfer this case to the Northern District of California.

Dated: October 13, 2020

Respectfully submitted,
*/s/ R. William Sigler*
Alan M. Fisch (*pro hac vice*)
D.C. Bar No. 453068
*alan.fisch@fischllp.com*
R. William Sigler (*pro hac vice*)
D.C. Bar No. 490957
*bill.sigler@fischllp.com*
Adam A. Allgood
Texas Bar No. 24059403
*adam.allgood@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
202.362.3500

*Attorneys for Juniper Networks, Inc.*

---

[66] *See, e.g.*, *Affinity Labs*, 2014 WL 12570501, at *4.

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2020, I caused the foregoing document to be served

via the Court's CM/ECF system on all counsel of record per Local Rule CV-5(b).

*/s/ R. William Sigler*


## CERTIFICATE OF CONFERENCE

Per Local Rule CV-7(i), Juniper states that counsel has complied with the meet-and-con-

fer-requirement of the Local Rules and that Correct Transmission opposes the foregoing motion.

The parties could not reach agreement because Juniper believes that § 1404(a) transfer to the

Northern District of California is warranted and Correct Transmission disagrees.

*/s/ R. William Sigler*