**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| CORRECT TRANSMISSION, LLC § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> JUNIPER NETWORKS, INC. § <br> § <br> Defendant. § <br> § | **PUBLIC VERSION** <br><br> Civil. Action No. 6:20-CV-670-ADA <br><br> **JURY TRIAL DEMANDED** |

**CORRECT TRANSMISSION, LLC'S OPPOSITION TO
JUNIPER NETWORKS, INC.'S MOTION TO TRANSFER**

**INTRODUCTION**

Juniper has executed the familiar playbook that defendants now use when challenging venue: the defendant picks its favorite venue (e.g., the Northern District of California), conducts a results-oriented "investigation" that supports only the desired forum, cites that investigation in its transfer motion, and then makes sure never to give the plaintiff any information undermining the defendant's desired forum. Here, Juniper's motion and discovery responses tout the results of its self-proclaimed "reasonable investigation" about its Texas employees and their purported lack of *any* "relevant knowledge of the design or development of the accused features," and then cites that investigation as conclusive proof the case should be transferred. But CT's own investigation exposes Juniper's investigation for the results-oriented sham it always was.

The information CT discovered on its own—because Juniper failed to turn over the information in discovery—shows that this District is the more convenient forum. This forum is more convenient for the inventors of the Patents-in-Suit and for key non-party witnesses (former Juniper employees) who are either located in or within subpoena range of this District. Such witnesses include, for example, a resident of McKinney, Texas, who, while employed at Juniper, wrote four books extensively discussing the design and development of accused features and products, and still worked for Juniper well after Juniper's "investigation" began. But Juniper never identified this Texas employee or still another, an Austinite and former Vice President of Engineering who led multiple Juniper teams in the development and testing of several accused products. Couple this evidence with CT's evidence of the practical considerations disfavoring transfer, *especially* the time to trial in this District versus more than double that time in California, and the facts weigh heavily against transfer. Juniper's results-oriented investigation therefore failed: the Northern District of California is not clearly more convenient.

**I.     BACKGROUND**

CT filed its Complaint for Patent Infringement on July 23, 2020 asserting U.S. Patent Nos. 6,876,669; 7,127,523; 7,283,465; 7,768,928; and 7,983,150 ("Patents-in-Suit"). Dkt. 1. On

October 13, 2020, Juniper filed its Opposed Motion to Transfer Venue to the Northern District of California ("Motion to Transfer"). Dkt. 20. In support, Juniper attached the declaration of its Director of Litigation, David M. Saunders. Dkt. 20-1. Juniper represented that its good-faith investigation located just 12 employees with knowledge relevant to the accused products (ten in California, one in Massachusetts, and one in India). Dkt. 20 at 1–2, 8. Juniper then repeatedly represented—in its motion and in venue discovery—that no current or former Texas employees have relevant knowledge.[1]

During venue discovery, CT served its first set of interrogatories, Ex. 1, and requests for production, Ex. 2, seeking information about Juniper's purported investigation into its current and former employees in Texas who had knowledge of or involvement in the "design, development, creation, manufacture, or testing of the Accused Instrumentalities," including "Jay Pochop." In its responses, Juniper said it began its investigation in August 2020 and used "factors such [as] the employee's job title, responsibilities, Juniper internal documents authored by the individuals, department, and start date" to arrive at its conclusions. Ex. 3 at 6, 9. Although Juniper produced a long list of current and former employees in Texas, Juniper affirmatively represented that not one of them had "relevant knowledge."[2] Ex. 3 at 6; *id.* at 11 ("Juniper determined that these former employees likely have no relevant knowledge of the design or development of the accused features.").

---

[1] Dkt. 20 at 1 ("None are in Texas. . . . there are no known third-party witnesses in Texas."); 5 ("Juniper isn't aware of any relevant . . . potential witnesses in this District, or elsewhere in Texas."); 8 ("Juniper isn't aware of any party witnesses located in Texas, much less any key witnesses."); Dkt 20-1 ("[O]f the twelve individuals Juniper has so far identified as potentially having relevant knowledge regarding the accused products . . . . None are in Texas."); Ex. 3 at 9, 11, Am ROGs (searching "who could have potentially relevant knowledge of the accused features" but finding "these former employees likely have no relevant knowledge . . . .").

[2] Ex. 5, PDF excerpt of Juniper Former Employees Spreadsheet; Ex. 32, PDF excerpt of Juniper Current Employees Spreadsheet.

CT performed its own investigation, however, and found several individuals with highly relevant knowledge in Texas and in this District.[3] CT highlights two of these individuals here: Douglas Hanks and Jay Pochop. Hanks started working at Juniper in November 2010 and had several titles and responsibilities at Juniper. Ex. 11. As a Senior Director of Product Management and Strategy, Hanks worked "in the Juniper Development and Innovation (JDI) department that's responsible for creating hardware, software, and solutions for Juniper switching products." *Id.* Notably, Hanks even had the same title as one of the persons Juniper identified as being the most knowledgeable.[4] As a Senior Data Center Architect, Hanks "create[d] the software, the hardware, and the solutions for [Juniper's] data center products and that revolves around [Juniper's] switches, [its] management platform, and some campus access products as well."[5] Hanks loved what he did: "[T]hat's my daily life, that's all I do 24/7 and I absolutely love it."[6]

Hanks channeled that passion for his work at Juniper into authoring six detailed publications on several of the accused products: (1) *Juniper MX Series: A Comprehensive Guide to TrioTechnologies on the MX* (902 pages); (2) *Securing the Routing Engine on the M, MX and T Series* (150 pages); (3) *Juniper QFX10000 Series* (268 pages); (4) *Multi-Stage Clos Architectures* (35 pages); (5) *Juniper MX Series 2nd Edition* (1,140 pages); and (6) *Juniper QFX5100 Series* (310 pages).[7] Hanks also embarked on speaking engagements about the products and publications.

---

[3] In addition to the aforementioned Mr. Pochop and Mr. Hanks:
  1. Roger Jennings (Austin, Texas) was a Director of Engineering and part of the design team for Juniper routers (Ex. 6). Mr. Jennings is presumed unwilling as well. *See* Ex. 15 at ¶ 6.;
  2. Ravi Shankar Kathirivelu (Frisco, Texas) was a Senior Staff Engineer and Senior Product Line Manager for Core Routing Products (Ex. 7);
  3. Rehan Zaki (Plano, Texas) was a Director of Product Line Management (Ex. 8); and,
  4. Todd Walker (Dallas Metroplex) was an Architect who gave a detailed presentation on several accused products and is located on Juniper's knowledge-base website (Exs. 9 & 10).

[4] Ex. 12 at 86:5–11, 87:6–88:13

[5] Ex. 29 at ¶ 1 (time stamp 0:11 to 0:31).
[6] *Id.*
[7] Ex. 29.

Hanks worked at Juniper until at least September 18, 2020,[8] several months after this lawsuit was filed and approximately a month *after* Juniper began its "investigation." When confronted, ███████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████ Ex. 12 at 38:11–12. ████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

████████████████████████████████████████[9] This is so, says Juniper, even though Hanks's 2016 volume on the Juniper MX Series (an accused product in this case) discusses many technical aspects highly relevant to CT's infringement theories, such as link aggregation, spanning tree protocol, and Bridging and VLAN (among many others). Ex. 31.

Then there's Jay Pochop, who worked at Juniper from 2009 until 2017. Ex. 4. Starting as Director of WLAN Engineering to Senior Director of Engineering and working his way up to Vice President of Engineering, Pochop led the development team, including hardware and testing, for the WLANvision, led the "S3BU (Security, Switching, and Solutions BU)" hardware development team responsible for multiple accused products, and led the hardware engineering team "responsible for all Juniper hardware platforms development." *Id.* In fact, Pochop's profile discusses his work on five of the accused products in this case. *Id.* Moreover, Pochop was also part of Juniper's Patent Review Committee at the time that Juniper was prosecuting several patents relating to network switches. That is a vital fact in this case since *the PTO relied on some of the Patents-in-Suit as lead prior-art references to reject patent claims Juniper tried to obtain* in multiple patent applications. Exs. 24–28. Yet, when confronted with these facts during its deposition, ███████████████████████████████████████

---

[8] *Compare* Ex. 5 *with* Ex. 11 ████████████████████████████████████████ Mr. Hanks's LinkedIn page, which says he left in early 2021. Given the unexplained shortcomings of Juniper's investigation, it is difficult to know which of these pieces of information to trust.

[9] Ex. 12 at 55:6-56:7 ██████████████████████████████████████████████████
████████████████████████████

██████ Ex. 12 at 84–85. ██████

██████ Ex. 12 at 38:11–12.

## II.    ARGUMENT & AUTHORITIES

"A plaintiff's selection of venue is entitled to deference." *eRoad Ltd. v. PerDiemCo LLC*, 2019 WL 10303654, at *4 (W.D. Tex. Sep. 19, 2019). Specifically, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008); *see also QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 664 (E.D. Tex. 2007) (characterizing movant's burden as "heavy"). While a court "may 'consider undisputed facts outside the pleadings, . . . it must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party.'" *SynKloud Techs., LLC v. Dropbox, Inc.*, 2020 WL 2494574, at *2 (W.D. Tex. May 14, 2020) (citation omitted). Here, four factors weigh against transfer, one slightly favors transfer, and the rest are neutral. Accordingly, weighed in the balance, the factors do not favor transfer.

**A. The Private Interest Factors Weigh Heavily Against Transfer**

**1. The Relative Ease of Access to Sources of Proof is Neutral.**

Despite what Juniper argues in its motion, "witnesses are not sources of proof to be analyzed under this factor." *Kuster v. W. Digital Techs.*, 2021 WL 466147, at *2 (W.D. Tex. Feb. 9, 2021). Only documents and physical evidence are considered. *Id.* at *3.

Juniper makes too much of the fact that its source code and "the vast majority of documents relevant to the accused products, including technical, marketing, and financial documents," are located in California. Dkt. 20 at 11. Here, discovery showed that Juniper's documents and source code exist almost exclusively in electronic form and are stored on servers all over the country. In addition to their storage at Juniper's California headquarters, ██████ Ex. 13 at 13, 15. ██████ Ex. 13 at 12. Accordingly, this

factor is neutral at best: "all of [Juniper's] documents are available electronically and can easily be made available in this District," *Ecofactor, Inc., v. Vivint, Inc.*, 2021 WL 1535414, at *3 (W.D. Tex. Apr. 16, 2021) (internal quotation marks omitted), including source code, which "is, by its very nature, electronic, [and] can be easily transported electronically to distant locations essentially instantaneously." *Fintiv, Inc. v. Apple Inc.*, 2019 WL 4743678, at *3 n.1 (W.D. Tex. Sept. 13, 2019).[10] This factor, therefore, does not weight in favor of transfer.

2. **Key Non-Party Witnesses Are Located Within this Court's Subpoena Range.**

Although Juniper identified one potential non-party witness (at most) that *may* live in California, Juniper made no showing that witness is an "unwilling" one for purposes of transfer. And there are multiple highly-relevant non-party witnesses located within this District and within this Court's subpoena range. Accordingly, this factor weighs heavily against transfer.

This factor examines "the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order." *Fintiv*, 2019 WL 4743678, at *5. "This factor weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue" because "live trial testimony is crucial for evaluating a witness's testimony." *Kuster*, 2021 WL 466147, at *4 (internal quotation marks omitted).

Witnesses may be subpoenaed (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to

---

[10] As an aside, Juniper added that "[a]ny hard copy documents or files stored on individual laptops would be stored where those individuals are located," and Juniper contends the relevant persons are in California. Ex. 13 at 15. However, nonspecific references to copies of documents that may exist is not sufficient evidence to support this factor. *See Kuster*, 2021 WL 466147, at *3.

attend a trial and would not incur substantial expense." FED. R. CIV. P. 45(c)(1)(A), (B)(ii). And subpoenas requiring traveling of up to 160 miles are routinely upheld under Rule 45's provisions.[11]

Although Juniper contends "*no* [relevant] witnesses appear to be in this District" and that some of the inventors reside in Juniper's desired forum, Dkt. 20 at 8–9, CT knows better, and the record proves otherwise. One of the two inventors Juniper cites (Harel) lives *and has always lived* in Israel. Ex. 14. Even still, Juniper makes no showing that these inventors are unwilling to testify at trial and thus require a subpoena. *Turner v. Cincinnati Ins. Co.*, 2020 WL 210809, at *3 (W.D. Tex. Jan. 14, 2020) ("This private interest factor carries far less weight when the movant has not alleged or shown that any witnesses are unwilling to testify."). More importantly, CT's own investigation proves that at least two highly relevant non-party witnesses are located within this Court's subpoena range; one of them ▇▇▇▇▇ resides in this District. *See supra* n.11. And CT has further confirmed that these two witnesses are unwilling to attend trial without a subpoena. Ex. 15.

That Hanks and Pochop possess highly relevant and unique knowledge of the accused products is manifest in the record. Their titles, their roles in the design of many accused products, their tenure at Juniper, and publicly available information all show that they have important knowledge about the merits of this case. *See supra* at 2–5. For Pochop, that information includes key roles in leading hardware development teams responsible for multiple accused products—five of them by his own admission, *id.*—and his eight-year tenure on Juniper's Patent Review Committee, Ex. 4, including during the time when Juniper prosecuted patents citing CT's Patents-in-Suit. Exs. 24–28. For Hanks, and the near-decade he spent as Juniper's Senior Director of Product Management and Strategy—the same title as one of Juniper's purported most "knowledgeable" witnesses—that information includes his several books, internal publications, and virtual presentations and videos exhibiting his *vast* knowledge about accused products and

---

[11] Numerous courts have refused to find "substantial expense" despite evidence that witnesses may be required to travel up to 160 miles. *Eakin v. Rosen*, 2015 WL 8757062, at *10 (S.D. Ga. Dec. 11, 2015) (122 miles); *see also Chrimar Sys., Inc. v. Juniper Networks, Inc.*, 2016 WL 126936, at *4 (E.D. Tex. Jan. 11, 2016) (120 miles); *N5 Techs., LLC v. Bank of Am., N.A.*, 2014 WL 558762, at *4 (E.D. Tex. Feb. 10, 2014) (160 miles).

their features. Ex. 11; *see also* Ex. 29. With these non-party witnesses located within this District or subpoena range—but far from California—this factor heavily disfavors transfer.

3. **Convenience of Witnesses.**

The most important factor in the transfer analysis—"the convenience of the witnesses"—also weighs heavily against transfer. *See Auto-Dril, Inc. v. Pason Sys. USA Corp.*, 2015 WL 12780768, at *3 (W.D. Tex. May 22, 2015). Party witnesses are entitled to little weight under this factor; the convenience of non-parties is given substantial weight. *See ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, 2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010).

Under these principles, the convenience of Juniper's 12 cherry-picked witnesses—all of whom conveniently reside outside of this District—is largely immaterial. Dkt. 20-1 ¶ 10. Far more important are the "highly relevant non-party witnesses" evident in the record: the inventors and the initial owner of the Patents-in-Suit who find California inconvenient;[12] and Juniper's former employees in Texas who, like Hanks and Pochop, are knowledgeable about the design and development of accused products. *See Precis Grp.*, 2021 WL 932046, at *7. The convenience of these key non-party witnesses weighs heavily against transfer. *See id.; accord Mid-Continent Cas. Co. v. Petroleum Sols., Inc.*, 629 F. Supp. 2d 759, 763 (S.D. Tex. 2009).

4. **Practical Matters.**

Judicial economy and other "practical matters" "that make a trial easy, expeditious, and inexpensive" weigh against transfer. *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). When, as here, "there are pending cases before the court between the plaintiff and another defendant involving the same patent-in-suit, pertaining to the same underlying technology, and involving similar accused services," these practical matters loom large. *Auto-Dril, Inc.*, 2015 WL 12780768 at *4. Indeed, leaving two cases involving precisely the same issues pending

---

[12] It will be more convenient, for example, for the inventors and former Orcket executive to travel to one location as opposed to two for these cases. *Id.* It is less expensive to travel to one location—only one flight into the United States, one hotel room, one rental car, one trip of meals, etc. Furthermore, if the case were transferred, it is highly probable that this case and its companion case (the *ADTRAN* case) would end up on different schedules, which in turn would make travel even more costly and duplicative for the Israeli witnesses.

simultaneously in different courts "leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 26 (1960). Accordingly, judicial economy may *itself* justify denying a § 1404 motion. *Auto-Dril*, 2015 WL 12780768, at *4–5. And here, that kind of denial is justified.

The *ADTRAN* Case—which involves the same Patents-in-Suit and the same underlying technologies and products (routers and switches)—is proceeding on a parallel schedule, with a joint *Markman* hearing scheduled on May 28, 2021. Dkt. 36 at 3; *ADTRAN* Case, Dkt. 34 at 3. A transfer of this case to California would necessarily result in duplicative efforts, including two separate *Markman* hearings held in different jurisdictions on overlapping terms. *Auto-Dril*, 2015 WL 12780768, at *4–5. That result defeats judicial economy and risks inconsistent results. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). This factor too disfavors transfer.

**B. The Private Interest Factors Weight Against Transfer**

**1. The time to trial is more than double in the Northern District of California than in the Western District of Texas.**

One vital inquiry in the transfer analysis is how quickly the two disputed courts will try the case. *Precis Grp.*, 2021 WL 932046, at *8. If the present court has a faster average time to trial, transfer is disfavored. *EcoFactor*, 2021 WL 1535414, at *6. As such, transfer is disfavored here.

The average time to trial in Juniper's favored court is more than double than this District: 44.5 months versus this Court's 20.4 months. Ex. 30. And that is *before* existing COVID-19 related backlogs are considered: "the NDCA suspended all criminal and civil jury trials until at least early 2021, and there is no evidence that any division in the NDCA is fully open to this date." *EcoFactor,* 2021 WL 1535414, at *6. Accordingly, "[i]f this case is transferred to the NDCA, in addition to deferred trial settings as a result of the COVID-19 pandemic, transferring this case and establishing a new schedule with a new presiding judge would cause greater delay." *Id*. Contrast that result with this Court's demonstrated record of safely conducting in-person jury trials as recently as last week, and this factor weighs heavily against transfer. *See id.*

## 2. Local Interest Factor is Neutral.

Whatever the location of its headquarters, Juniper cannot escape its substantial presence in Texas and, in particular, this District. Consideration of the local interest is a factor because "[j]ury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004).

Despite its California headquarters, Juniper has over 100 offices worldwide and maintains a significant presence in Texas, and in particular, this District. At the time of filing, Juniper maintained an office in the Western District of Texas and, by its own admission, has *numerous* current and former employees located in Texas: ███████████████ Ex. 1 at 11; Ex. 32. Juniper also sells its products in this District and even has a contract with the State of Texas for sales of Juniper products. Dkt. 1; Ex. 22. Accordingly, this factor is neutral, or at most, favors transfer only slightly. *See Kuster*, 2021 WL 466147, at *8.

## 3. The remaining factors are neutral.

The parties agree that the remaining factors, familiarity with governing laws and conflict of laws, are neutral.

## III.   CONCLUSION

Considering all the factors, Juniper has not met its burden to show that California is the clearly more convenient venue. Indeed, the balance of the factors weighs against transfer.

Dated: April 27, 2021

Respectfully Submitted,
/s/ *Joshua J. Bennett*
E. Leon Carter
lcarter@carterarnett.com
Texas Bar No. 03914300
Bradley D. Liddle
bliddle@carterarnett.com
Texas Bar No. 24074599
Scott W. Breedlove
sbreedlove@carterarnett.com
State Bar No. 00790361
Joshua J. Bennett
jbennett@carterarnett.com
Texas Bar No. 24059444
Monica Litle
mlitle@carterarnett.com
Texas Bar No. 24102101
Nathan Cox
ncox@carterarnett.com
Texas bar No. 24105751

CARTER ARNETT PLLC
8150 N. Central Expy, 5th Floor
Dallas, Texas 75206
Telephone No. (214) 550-8188
Facsimile No. (214) 550-8185

ATTORNEYS FOR PLAINTIFF

### **CERTIFICATE OF SERVICE**

I certify that on April 27, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing on all counsel of record.

/s/ *Nathan Cox*
Nathan Cox